UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EHO360 LLC, | § | |
| Plaintiff, | § § § | |
| v. | § § | CIVIL ACTION NO. 3:21-CV-0724-B |
| NICHOLAS OPALICH and TAMMY RADCLIFF, | § § § § | |
| Defendants. | § § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This dispute involves the actions of Plaintiff EHO360, LLC ("EHO")'s former Chief Executive Officer, Defendant Nicholas Opalich, following his termination from EHO. From March 27 to March 29, 2023, the Court held a bench trial in the case, and on March 31, it entered findings of fact and conclusions of law on the record, ruling in favor of EHO on all of its claims.[1] As set forth below, the Court's ruling was based, in large part, upon Opalich's testimony and EHO's exhibits. All of the Court's findings of fact and conclusions of law are based on the evidence presented at trial and the applicable law based upon those facts. These findings are detailed below.[2]

---

[1] Those findings of fact and conclusions of law dictated from the bench are incorporated herein by reference.

[2] Any finding of fact that is in actuality a conclusion of law should be treated as such. Any conclusion of law that is in actuality a finding of fact should be treated as such.

-1-

# I.

# BACKGROUND

A.   *Summary of the Parties' Claims and Defenses*

    1.   <u>Plaintiff's Claims[3]</u>

EHO brings this action against its former executive for misusing EHO's confidential information to pursue various business opportunities, form and operate a competing company in violation of his contractual and fiduciary duties to EHO, and fraudulently induce EHO to pay him more than $70,000.00 in severance following the termination of his employment.

EHO alleges the following causes of action against Opalich. First, EHO claims Opalich breached several provisions of his Executive Employment Agreement. Specifically, EHO claims Opalich breached Section 9(a) of the Executive Employment Agreement by: (a) disclosing EHO's confidential information to others; (b) misusing EHO's confidential information to pursue various business opportunities and form and operate a competing business; and (c) failing to deliver to EHO all data, notes, letters, documents, and records which were in his possession when his employment with EHO was terminated. In addition, EHO claims Opalich breached Section 9(b) of the Executive Employment Agreement by: (a) attempting to solicit an EHO customer, AscendPBM, LLC ("Ascend"), for the purpose of selling or providing Ascend products or services of the same or similar kind as provided by EHO; (b) providing services to, and acting in concert with, others in competition with EHO; and (c) inducing, calling on, and attempting to hire Radcliff while she was still employed by EHO. Finally, EHO claims Opalich breached Section 11 of the Executive Employment Agreement by failing to deliver to EHO all EHO files, customer lists,

---

[3] The summary of Plaintiff's claims is quoted, with minor formatting and wording changes, from the parties' Joint Pretrial Order (Doc. 154). Any errors are the parties' own.

memoranda, research, and other documents supplied to or created by him in connection with his employment with EHO after his employment was terminated.

Second, EHO claims Opalich breached his fiduciary duties to EHO by misusing EHO's confidential information to pursue various business opportunities and form and operate a competing business after his employment with EHO was terminated.

Third, EHO claims Opalich fraudulently induced EHO to pay him more than $70,000 in severance after EHO terminated his employment by falsely representing to EHO that he: (a) had returned all of EHO's confidential information; (b) destroyed all copies of EHO's confidential information on his personal devices so that he could not access such information again in the future; (c) would not retain copies or derivations of any EHO records, documents, materials, or information, including confidential information; and (d) would not use EHO's confidential information after the termination of his employment.

EHO seeks to recover from Opalich: (a) the actual damages it has suffered as a result of his breaches of contractual and fiduciary duties and fraud; (b) forfeiture and disgorgement of all compensation and other benefits Opalich acquired in violation of his fiduciary duties; (c) exemplary damages; (d) attorneys' fees under Chapter 38 of the Texas Civil Practice and Remedies Code and the Confidential Severance and General Waiver Agreement between Opalich and EHO; (e) costs; (f) pre- and post-judgment interest; and (g) a permanent injunction prohibiting Opalich's misuse of EHO's confidential information.

2.  Defendant's Defenses[4]

EHO's claims against Opalich are a fabricated scheme. EHO terminated Opalich so that it could avoid paying Opalich a hefty bonus upon the sale of the company. EHO alleges that Opalich breached his non-compete and/or non-solicitation obligations to EHO. But this is not true. After EHO terminated Opalich, he negotiated a reduced severance that resulted in his non-compete and non-solicitation obligations expiring on November 30, 2020. There is no evidence that Opalich competed with EHO before that date or solicited any EHO clients or employees at any time.

EHO alleges that Opalich fraudulently induced EHO into paying him a severance by resetting his laptop computer. However, Opalich reset his laptop computer before he returned it to EHO because he was concerned about the personal files he had saved on that computer. He returned the computer on October 8, 2020. EHO and Opalich executed the Severance Agreement a month later on November 6, 2020. It is nonsensical for EHO to argue that it reasonably relied on the computer being returned intact when it received it a month before EHO agreed to the severance.

EHO alleges that Opalich "pilfered" EHO's so-called "Hospice Business Plan." But the "plan" was prepared by placing Opalich's previously-known information and assumptions about hospice businesses into a form spreadsheet created by third party named Cindy Kepler. It contains no EHO information, and Opalich has not contacted any of the hospice providers identified. Moreover, EHO has never attempted to use the "plan" after Opalich was terminated. EHO alleges that Opalich improperly disclosed information that EHO obtained from KloudScript. EHO maintains that Opalich breached his confidentiality obligations to EHO because he disclosed

---

[4] The summary of Defendant's defenses is quoted, with minor formatting and wording changes, from the parties' Joint Pretrial Order (Doc. 154). Any errors are the parties' own.

KloudScript's confidential information to Stephen Greene. However, Opalich had previously introduced Greene to KloudScript, and Greene had signed an NDA with KloudScript that required him to maintain the confidentiality of the information. Opalich knew that Greene was an expert in valuation and sought his advice as to what EHO should pay for KloudScript if it decided to make a purchase offer. There is no evidence that any of this information has been improperly used or that EHO has been damaged as a result.

EHO alleges that Opalich improperly disclosed confidential information obtained from a third party to his son-in-law, Nicholas Rogoff ("Rogoff"). In reality, EHO tasked Opalich, in part, with obtaining a buyer for EHO. Opalich asked Rogoff to provide analysis of a purchase proposal from a third party. Opalich did not improperly disclose EHO confidential information to Rogoff, who was working at Opalich's direction on behalf of EHO. Opalich was relying on Rogoff's expertise to assist EHO. There is no evidence any of this information has been improperly used or that EHO has been damaged as a result.

EHO alleges that Opalich improperly sent information belonging to Capital City/Queen City Hospice ("Capital City/Queen City") to EHO client Ascend PBM ("Ascend"). However, the information was related to Capital City/Queen City Hospice's business and to Opalich and Radcliff's knowledge, Capital City/Queen City provided the information to EHO without any confidentiality agreement. At the time of the disclosure, Opalich was not aware that the version of the spreadsheet he shared with Ascend included an EHO price proposal – he had intended only to share Capital City/Queen City information – and regardless, to his knowledge, EHO had shared the pricing proposal with Capital City/Queen City and others without a confidentiality agreement. There is no evidence any of this information has been improperly used or that EHO has been damaged as a result.

EHO alleges that Opalich improperly shared confidential information related to Nautic Partners with Stephen Greene. However, the information had nothing to do with EHO or the PBM business, was publicly available, and was not confidential.

EHO alleges that Opalich improperly shared EHO information with Stephen Greene. However, Greene was interested in investing in EHO and Opalich provided information subject to an MNDA executed by Greene. There is no evidence that any of this information has been improperly used or that EHO has been damaged as a result.

EHO alleges that Opalich consulted for BreatheAmerica, Inc. ("BreatheAmerica") during his employment with EHO. However, Opalich did not consult for BreatheAmerica or any other company while employed by EHO. EHO's entire claim concerning this arrangement is based on a blank consulting agreement Opalich sent to Radcliff so that she had a template to use as she looked to hire consultants for EHO. Opalich testified that his consulting for BreatheAmerica started and ended in 2017, nearly two years before he became employed by EHO.

EHO alleges that it terminated Opalich because he failed to disclose a tax felony he plead guilty to in 2009 regarding events that took place in 2002 – 17 years before EHO hired him. But, EHO did not ask Opalich about his background nor did EHO perform a background check before hiring him. There is no evidence that Opalich made false statements to EHO regarding his background or that the existence of the tax felony (or the failure to disclose it) has damaged EHO in any way. Instead, Opalich generated millions of dollars in revenue for EHO during his tenure and was awarded a maximum bonus in his only full year there.

Even if EHO's claims against Opalich were true, which they are not, EHO has lost no clients or opportunities nor has it been damaged in any other way by Opalich's actions; it has not even attempted to get business from the hospice providers identified by Opalich for EHO in the

Hospice Business Plan. EHO's case is in the same position it was when this Court denied EHO's Motion for Preliminary Injunction and found that there was no evidence that EHO had lost any clients or that Opalich had used any of EHO's confidential information.

Finally, Opalich raises the defenses of waiver, ratification, and consent.

## II.

## FINDINGS OF FACT

The bench trial in this case lasted approximately three days. The Court heard testimony from seven witnesses. Four witnesses testified in person: Bryan Springston, Robert Curb, Nicholas Opalich, and Larry Luedke. The other three witnesses' testimony was read into the record via their deposition transcript. These witnesses were Cindy Kepler, Marc Sweeney, and Tammy Radcliff. Both parties also presented exhibits including documents such as Opalich's Employment Agreement, Opalich's Severance Agreement, and various emails from Opalich to third parties attaching EHO's information. Having heard the testimony and reviewed the exhibits, the Court makes the following findings of fact as to EHO's claims:

1. EHO and Opalich are parties to the Executive Employment Agreement, which is a valid and enforceable contract. PX 1.[5]

2. EHO terminated Opalich on September 15, 2020.

A. *Breach of Contract Claim*

3. Opalich breached Section 9(a) of the Executive Employment Agreement.

---

[5] All citations to admitted trial exhibits shall be referenced in this form, with the exhibit number corresponding to the jointly submitted Index of Admitted Exhibits filed with the Court on March 23, 2023. Doc. 152.

   a. EHO presented credible evidence that Opalich breached Section 9(a) of the Executive Employment Agreement by "disclos[ing]" and "us[ing]" EHO's confidential information "for his own purposes." PX 1, 20, 21, 25, 29, 57, 59, 61, 65, 77, 104, 105.

   b. Opalich testified that while he believed at the time the information was not confidential, he admitted he did use EHO's confidential information, such as the Hospice Business Plan and the Capital City Reprice, for his benefit.

   c. EHO presented credible evidence and testimony that the information in the Hospice Business Plan and the Capital City Reprice was confidential to EHO and was not in Opalich's possession prior to his employment.

  4. Opalich breached Section 9(b) of the Executive Employment Agreement.

   a. EHO presented credible evidence that Opalich breached Section 9(b) of the Executive Employment Agreement by soliciting Tammy Radcliff to leave EHO. PX 129, 130.

   b. While Opalich testified he did not solicit Racliff, the Court finds his testimony contradicted by the evidence EHO presented. PX 129, 130.

   c. EHO presented credible evidence that Opalich breached Section 9(b) of the Executive Employment Agreement by soliciting Ascend, an EHO customer, to leave EHO. PX 77.

   d. Opalich testified he hoped he could convince Ascend to leave EHO.

  5. Opalich breached Section 11 of the Executive Employment Agreement.

   a. EHO presented credible evidence that Opalich did not return documents "supplied to or created by him in connection with his employment." PX 1, 20, 21, 25, 29, 57, 59, 61, 65, 77, 104, 105.

   b. Opalich admitted during his testimony he retained several of EHO's documents.

6. Opalich's covenants in Section 9(b) of the Executive Employment Agreement did not expire when payment was made under the Confidential Severance and General Waiver Agreement.

    a. While Opalich claimed this benefit was included in the Confidential Severance and General Waiver Agreement, Opalich presented no credible evidence of such a benefit in the Confidential Severance and General Waiver Agreement.

7. Even if the covenants were to expire upon the payment under Confidential Severance and General Waiver Agreement, the expiration of the covenants was tolled under Section 9(d) of the Executive Employment Agreement by Opalich's breaches.

    a. EHO presented credible evidence that Opalich breached Section 9(b) of the Executive Employment Agreement by soliciting Radcliff to leave EHO prior to the payment of the severance. PX 129, 130.

8. EHO is entitled to damages as a result of Opalich's breach.

    a. EHO presented credible evidence that it is entitled to $2,294.46 for the forensic examination it conducted on Opalich's computer.

B. *Breach of Fiduciary Duty Claim*

9. Opalich, as EHO's Chief Executive Officer, owed fiduciary duties to EHO.

10. His duty to not use confidential information obtained during the course of his employment survived the termination of his employment.

11. Opalich breached his fiduciary duties to EHO by disclosing EHO's confidential information after his termination for his benefit.

    a. EHO presented credible evidence that Opalich disclosed EHO confidential information to benefit himself and his new company, HospisRx. PX 29, 57, 59, 61, 77, 104.

   b. Opalich testified that while he believed at the time the information was not confidential, he admitted he did use EHO's confidential information, such as the Hospice Business Plan, the Capital City Reprice, and the Ohio Health Proposal to benefit himself and HospisRx.

 12. As a result of his breach, Opalich obtained $273,250 in benefits from his salary at HospisRx.

   a. EHO presented credible evidence and Opalich testified that he received a salary of $250,000 with a 7.65% gross up. PX 49, 84.

 13. Because of Opalich's breach, EHO is entitled to disgorgement of $273,250.

C. *Fraudulent Inducement Claim*

 14. EHO and Opalich are parties to the Confidential Severance and General Waiver Agreement, which they mutually executed on November 6, 2020. PX18.

 15. Opalich made false representations in executing the Confidential Severance and General Waiver Agreement (PX18) and Affidavit of Nicholas Opalich and Certification of Destruction (PX19).

   a. Opalich admitted to making false representations regarding his return and use of EHO's confidential information during his testimony.

   b. EHO presented credible evidence that Opalich did not return EHO's confidential information and used EHO's confidential information before and after the execution of the Confidential Severance and General Waiver Agreement. PX 21, 29, 57, 59, 61, 77, 104.

 16. EHO relied on those representations in executing the Confidential Severance and General Waiver Agreement.

        a.      Larry Luedke testified that EHO relied on these representations and would not have entered into the Confidential Severance and General Waiver Agreement without the representations.

        b.      Opalich testified that he intended for EHO to rely on these representations when he made them.

17.      EHO paid Opalich $71,108.26 pursuant to the terms of the Confidential Severance and General Waiver Agreement.

18.      Opalich fraudulently induced EHO to enter the Confidential Severance and General Waiver Agreement and pay him $71,108.26.

19.      EHO is entitled to recover $71,108.26 as a result of Opalich's fraudulent inducement.

D.    *Exemplary Damages*

20.      Opalich acted with fraud and malice.

        a.      EHO has presented clear and convincing evidence that Opalich fraudulently induced EHO to enter the Confidential Severance and General Waiver Agreement.

        b.      EHO has presented clear and convincing evidence of Opalich's malice towards EHO. PX 130.

21.      Because of Opalich's fraud and malice, EHO is entitled to exemplary damages.

        a.      The Court concludes, in its discretion, that EHO is entitled to exemplary damages in the amount of $500,000.

E.    *Permanent Injunction*

22.      The Court also finds EHO is entitled to a permanent injunction preventing Opalich from using EHO's confidential information in the future.

      a.    Opalich testified that he is still in possession of EHO's confidential information.

      b.    The parties also agreed in the Executive Employment Agreement that "a violation of [Section 9(a)] would seriously and irreparably impair and damage [EHO's] business." PX 1. EHO presented credible evidence that the disclosure of its confidential information resulted in irreparable harm that is difficult to quantify in monetary damages.

      c.    EHO also presented credible evidence that Opalich continued to use its confidential information after this lawsuit was filed and made attempts to conceal his use. PX 61.

      d.    The Court finds an injunction is necessary to prevent future harm to EHO and imposes little burden on Opalich, as he is already contractually bound to not disclose EHO's confidential information by the Executive Employment Agreement and has a fiduciary duty to not disclose EHO's confidential information. PX 1.

23. In total, the Court concludes that EHO is entitled to $846,652.72 in actual and exemplary damages and a permanent injunction prohibiting Opalich from using EHO's confidential information in the future.

F. *Attorneys' Fees*

24. Because EHO has prevailed on its claim against Opalich for breach of contract, the Court finds that EHO is entitled to recover attorneys' fees and costs from Opalich pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code and the terms of the Severance Agreement.

25. EHO is hereby directed to file a motion for attorneys' fees in accordance with Federal Rule of Civil Procedure 54(d).

## III.

## CONCLUSIONS OF LAW

1.   Opalich breached Sections 9(a) and 9(b) of his Executive Employment Agreement.[6]

2.   Opalich breached his fiduciary duties to EHO.[7]

3.   Opalich fraudulently induced EHO to enter into the Confidential Severance and General Waiver Agreement.[8]

4.   EHO is entitled to damages for Opalich's breach of the Executive Employment Agreement.[9]

5.   EHO is entitled to damages for Opalich's breach of fiduciary duty.[10]

---

[6] *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 993 (5th Cir. 2019) (holding "breach of contract requires four elements: (1) a valid contract, (2) plaintiff's performance, (3) defendant's breach, and (4) resulting damages")

[7] *Jones v. Blume,* 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied) ("The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant."); *Miller Paper Co. v. Roberts Paper Co.,* 901 S.W.2d 593, 600 (Tex. App.—Amarillo 1995, no writ) (holding former employees have a fiduciary duty to not "us[e] confidential or proprietary information acquired during the relationship in a manner adverse to his employer"); *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.,* 965 S.W.2d 18, 22 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd) ("[T]his duty . . . prevents the former employee's use of confidential information or trade secrets acquired during the course of employment.").

[8] *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 277 (5th Cir. 2012) ("[T]he elements of fraud must be established as they relate to an agreement between the parties."); *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 434 (Tex. 1986) ("A promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving and with no intention of performing the act.").

[9] *Sandberg v. STMicroelectronics, Inc.,* 600 S.W.3d 511, 528 (Tex. App.—Dallas 2020, pet. denied) (finding forensic examinations could constitute direct damages for a breach of contract claim).

[10] *Jones*, 196 S.W.3d at 447 (stating a plaintiff may recover damages which resulted in "injury to the plaintiff or benefit to the defendant"); *Burrow*, 997 S.W.2d at 240 ("An agent is entitled to no compensation for conduct which is disobedient or which is a breach of his duty of loyalty[.]"); *Orbison v. Ma-Tex Rope Company*, 553 20 S.W.3d 17, 30 (Tex. App—Texarkana 2018, pet. denied) (requiring a defendant to

      6.      EHO is entitled to damages for Opalich's fraudulent inducement.[11]

      7.      EHO is entitled to exemplary damages.[12]

      8.      EHO is entitled to a permanent injunction.[13]

## IV.

## CONCLUSION

For the reasons listed above, EHO has proven by a preponderance of the evidence its breach of contract, breach of fiduciary duty, and fraudulent inducement claim against Opalich. Thus, it is entitled to actual and exemplary damages and a permanent injunction against Opalich. A final judgment incorporating these findings and conclusions shall be entered in a separate order.

---

disgorge salary he received from the plaintiff and a third-party while "he was actively using [plaintiff's] confidential information to solicit its customers").

[11] *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (holding that "tort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract").

[12] Tex. Civ. Prac. & Rem. Code § 41.003(a) ("[E]xemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence."); *Id.* § 41.010(b) ("Subject to Section 41.008, the determination of whether to award exemplary damages and the amount of exemplary damages to be awarded is within the discretion of the trier of fact."); *Id.* § 41.011(a) ("In determining the amount of exemplary damages, the trier of fact shall consider evidence, if any, relating to: (1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of culpability of the wrongdoer; (4) the situation and sensibilities of the parties concerned; (5) the extent to which such conduct offends a public sense of justice and propriety; and (6) the net worth of the defendant."); Id. § 41.001 ("'Malice'" means a specific intent by the defendant to cause substantial injury or harm to the claimant").

[13] *Brown v. Bridges*, 2016 WL 3660666, at *9 (N.D. Tex. Jan. 26, 2016) (Solis, J.), *aff'd*, 692 F. App'x 215 (5th Cir. 2017) (stating that a plaintiff must show "(1) that it has suffered an irreparable injury; (2) monetary damages are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction" to obtain a permanent injunction); *TransPerfect Translations, Inc. v. Leslie*, 594 F. Supp. 2d 742, 757 (S.D. Tex. 2009) ("The use of an employer's confidential information and the possible loss of customers is sufficient to establish irreparable harm.").

SO ORDERED.

SIGNED: April 4, 2023.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE